Exhibit 1



JOHN K. VINCENT
United States Attorney
BENJAMIN B. WAGNER
ROBIN R. TAYLOR
Assistant U.S. Attorneys
501 "I" Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2745

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) No. Cr. S-00-345 FCD |
| v. | ) **PLEA AGREEMENT** |
| RICHARD SHEARER, | ) |
| Defendant. | ) |

I.

## INTRODUCTION

**A. Scope of Agreement**: The Superseding Indictment in this case charges the defendant with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and three counts of making and subscribing to false tax returns in violation of 26 U.S.C. § 7206(1). This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California (the "Government") and the defendant

regarding this criminal case.  The defendant understands
that nothing in this agreement affects the defendant's personal
federal tax liability, or restricts the United States or the
Internal Revenue Service from initiating any collection or civil
enforcement action relating thereto.

**B.   Contingent Agreement**:  The defendant understands that the
parties intend this plea agreement to be part of a "package"
arrangement involving both this agreement and a separate plea
agreement between the Government and co-defendant Richard D.
Pfeiffer, and that the Government's willingness to enter into either
plea agreement is contingent upon each of those two defendants
entering into, and fulfilling their obligations under, their plea
agreements.  Accordingly, if either this defendant or defendant
Pfeiffer breaches or withdraws from his plea agreement, the
Government will have the right to withdraw from both plea
agreements.

**C.   Charges**:  Count One of the Superseding Indictment, to which
the defendant herein agrees to plead guilty, charges a violation of
section 371 of Title 18, conspiracy to defraud the United States,
and has the following three elements: (1) that the defendant agreed
with at least one other person to defraud the United States by
impeding, impairing, obstructing and defeating the functions of the
Internal Revenue Service in the ascertainment, computation,
assessment and collection of income taxes, through the use of
deceit, craft, trickery and other dishonest means, (2) that the
defendant joined the conspiracy knowing of its object and intending

2

to help accomplish it, and (3) that one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.  Count Fifteen of the Superseding Indictment, to which the defendant herein agrees to plead guilty, charges a violation of section 7206(1) of Title 26, making and subscribing to a false tax return, and has the following four elements: (1) that the defendant signed a tax return that contained false information as to a material matter, that is, it understated the defendant's income, (2) that the defendant knew that the information was false, (3) that the return was signed subject to the penalties of perjury, and (4) that the defendant acted willfully.

**D.   Court Not a Party:**  The Court is not a party to this Plea Agreement.   Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the Government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.   If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this Agreement.   The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

///

///

3

## II.

### DEFENDANT'S OBLIGATIONS

**A.  Guilty Plea:**  The defendant will plead guilty to Count One and Count Fifteen in the Superseding Indictment, charging conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and making and subscribing to a false tax return in violation of 26 U.S.C. § 7206(1).  The defendant agrees that he is in fact guilty of these offenses and that the facts set forth in the Factual Basis attached hereto as Exhibit A are accurate.

**B.  Special Assessment:**  The defendant agrees to pay a special assessment of $200.00 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.  The defendant understands that this Plea Agreement is voidable by the Government if he fails to pay the assessment prior to that hearing.

**C.  Restitution:** Pursuant to 18 U.S.C. section 3663(a)(3), the defendant agrees to pay restitution to the Internal Revenue Service of $5,000, in partial satisfaction of his outstanding federal tax obligations to the IRS.  Such amount will be credited by the IRS against the principal amounts which the defendant owes IRS, in accordance with standard IRS procedure.  The defendant understands that this agreement does not relieve him from any legal obligation to pay additional amounts due and owing to the IRS.

///

4

## III.

### THE GOVERNMENT'S OBLIGATIONS

**A.   Dismissals:**  The Government agrees to move, at the time of sentencing, to dismiss with prejudice the remaining counts against this defendant in the pending Superseding Indictment.

**B.   Acceptance of Responsibility Recommendation:**  If the United States Probation Office determines that a three-level reduction in the defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the Government will not oppose such a reduction.

**C.   Sentencing Recommendation:**  If the defendant qualifies for a three level reduction in his offense level for acceptance of responsibility under section 3E1.1 of the sentencing guidelines, the Government will recommend that the defendant be sentenced in accordance with the stipulations set forth below, and at the low end of the applicable sentencing guideline range.

**D.   Other Charges:** The Government agrees not to criminally prosecute the defendant for any other violation of the federal tax laws which occurred during the period from January 1, 1995 to the present.

**E.   Future Practice of Profession:**  The Government agrees that it has no basis for opposing, and will not oppose, any application by the defendant to continue to practice medicine following the service of any prison term imposed in this case.  Upon request, the Government will provide a letter to that effect to any California

5

State licensing board or other relevant professional regulatory body.

## IV.

### MAXIMUM SENTENCE

**A. Maximum Penalty:** The maximum sentence which the Court can impose on Count One is 5 years of incarceration, a 3 year period of supervised release, a fine of $250,000, and a special assessment of $100. The maximum sentence which the Court can impose on Count Fifteen is 3 years of incarceration, a 1 year period of supervised release, a fine of $250,000, and a special assessment of $100.

**B. Violations of Supervised Release:** The defendant understands and agrees that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 2 additional years imprisonment.

## V.

### SENTENCING DETERMINATION

**A. Statutory Authority:** The defendant understands that a sentencing guideline range for this case will be determined by the Court pursuant to the Sentencing Reform Act of 1984 (18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998). The defendant further understands that the Court will impose a sentence within that guideline range, unless the Court finds that there is a basis for departure (either above or below the range) because there exists an

1 aggravating or mitigating circumstance of a kind, or to a degree,

2 not adequately taken into consideration by the Sentencing Commission

3 in formulating the guidelines.

4   **B.   Stipulations Affecting Guidelines Calculation:**   The

5 Government and the defendant agree that there is no material dispute

6 as to the following sentencing guidelines variables and therefore

7 stipulate to the following:

8   **1.   Base Offense Level:** The parties agree that the

9 applicable guideline sections for establishing the base offense

10 level are 2T1.9, 2T1.1, and 2T4.1, and that at an evidentiary

11 hearing the Government is currently in a position to prove that

12 the amount of presently determinable federal tax loss

13 attributable to the defendant's offense conduct in this case,

14 and to his relevant conduct consisting of the federal tax loss

15 associated with counts Thirteen and Fourteen in the Superseding

16 Indictment, and the federal tax loss associated with other

17 clients of defendant Crockett's from Northern California

18 during the period of the charged conspiracy which was

19 reasonably foreseeable to the defendant, is between $120,000

20 and $200,000, resulting in a base offense level under USSG

21 §2T1.1(a)(1) of 15.

22   **2.   Specific Offense Characteristics:** The parties agree

23 that the offense involved sophisticated concealment, in that it

24 involved the use of false invoices and offshore bank accounts,

25 resulting in another two-level increase pursuant to USSG

26

27

28

7

§2T1.1(b)(2).

3. **Multiple Count Rules:** The parties agree that Counts 1 and 15 should be grouped together into a single unit for purposes of the multiple count rules in Chapter 3, Part D of the sentencing guidelines.

4. **Acceptance of Responsibility:** Assuming that the defendant satisfies the Probation Officer that he has accepted responsibility, the parties agree that the defendant should receive a three-level reduction for acceptance of responsibility pursuant to § 3E1.1.

5. **Other Adjustments:** The parties agree that no specific offense characteristics or adjustments apply to this defendant in this case other than those referenced above.

6. **Sentencing Range:** The parties agree that the defendant is a criminal history category I, that the total adjusted offense level pursuant to the foregoing stipulations is an offense level 14, and that the corresponding sentencing range is therefore 15 to 21 months in prison.

C. **Departures:** The parties agree that the Government shall not move for an upward departure from the otherwise applicable sentencing guideline range.

## VI.

## WAIVERS

A. **Trial Rights:** The defendant understands that by pleading

8

guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to confront and cross-examine witnesses against him; (e) to summon witnesses to testify in his defense; and (f) not to be compelled to incriminate himself.

**B. Waiver of Appeal and Collateral Attack:** Pursuant to this Plea Agreement, the defendant waives the right to appeal or otherwise collaterally attack his guilty plea, whether by way of a motion pursuant to 28 U.S.C. § 2255 or otherwise, and, if the defendant's sentence is consistent with the stipulations set forth above regarding the sentencing guidelines variables, he similarly waives his right to appeal or collaterally attack his sentence.

**C.  Waiver of Attorneys' Fees and Costs:** The defendant agrees to waive all rights under the "Hyde Amendment", Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Agreement and any charges previously dismissed).

## VII.

### ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the Government and the defendant

1   exists, nor will such agreement, understanding, promise, or

2   condition exist unless it is committed to writing and signed by the

3   defendant, counsel for the defendant, and counsel for the United

4   States.

## VIII.

### APPROVALS AND SIGNATURES

8   **A.   Defense Counsel:**  I have read this Plea Agreement and have

9   discussed it fully with my client.  The Plea Agreement accurately

10  and completely sets forth the entirety of the agreement.  I concur

11  in my client's decision to plead guilty as set forth in this

12  Agreement.

14  DATED: _10/1/2001_                   _Matthew Gilmartin_

15                                        MATTHEW GILMARTIN
                                          Attorney for Defendant

18  **B.   Defendant:**  I have read this Plea Agreement including

19  Exhibit A, and carefully reviewed every part of it with my attorney.

20  I understand it, and I voluntarily agree to it.  Further, I have

21  consulted with my attorney and fully understand my rights with

22  respect to the provisions of the Sentencing Guidelines which may

23  apply to my case.  No other promises or inducements have been made

24  to me, other than those contained in this Agreement.  In addition,

25  no one has threatened or forced me in any way to enter into this

26  ///

27  ///

28  

10

1 | Plea Agreement.  Finally, I am satisfied with the representation of
2 | my attorney in this case.
3 |
4 |
5 | DATED: _____10/1/01_____          _____
                                      RICHARD SHEARER, Defendant
6 |
7 |
8 |
9 |
10 |
11 |
12 | C.  Attorney for United States:
13 |      I accept and agree to this Plea Agreement on behalf of the
14 | Government.
15 |
16 | DATED: _____10/1/01_____
17 |
18 |                                   JOHN K. VINCENT
                                      United States Attorney
19 |
20 |                                   By: _____
21 |                                   BENJAMIN B. WAGNER
                                      Assistant U.S. Attorney
22 |
23 |
24 |
25 |
26 |
27 |
28 |

11

**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. Cr. S-00-345 FCD |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | FACTUAL BASIS FOR PLEA OF GUILTY |
| | ) | |
| RICHARD SHEARER, | ) | |
| | ) | |
| Defendant. | ) | |

The defendant and the Government agree that the following is an accurate description of the factual basis for the defendant's plea of guilty to Count 1 in the Superseding Indictment, charging the defendant with conspiracy to defraud the United States, a felony violation of Title 18, United States Code, Section 371, and to Count 15 in the Superseding Indictment, charging the defendant with making and subscribing to a false tax return, a felony violation of Title 26, United States Code, Section 7206(1):

1.   At all times relevant to the conduct alleged in the Superseding Indictment, defendant Richard Shearer was a doctor who lived and worked in the Eastern District of California.  In approximately early 1996, the defendant became a client of Lonnie Crockett, who operated a business known as Farr West Consulting, located in Bountiful, Utah.  Crockett was in the business of, among other things, providing accounting, trust and tax advice, and creating and maintaining trusts, or so-called "unincorporated organizations."  Crockett had clients from across the United States.

1

2.   Beginning in December, 1995, and continuing through August, 2000, defendant Shearer conspired with Lonnie D. Crockett and with other Crockett clients who were also medical professionals who resided in the same area and were acquaintances of the defendant, including Daniel Bullock and Richard D. Pfeiffer, to defraud the United States by impairing, impeding, obstructing and defeating the lawful functions of the Internal Revenue Service in the ascertainment, computation, assessment, and collection of federal income tax liabilities with respect to their income.

3.   No later than late 1995, defendant Richard Shearer deposited substantial net income from his medical practice into a bank account he controlled that was in the name of a trust he controlled.   In furtherance of the conspiracy to conceal such income from the Internal Revenue Service, defendant Shearer and other co-conspirators then cycled such U.S. income through bank accounts in Utah controlled by defendant Crockett and through foreign bank accounts, and then back to bank accounts in the Eastern District of California which were controlled by defendant Shearer and the co-conspirators.   The cycling of funds by Shearer was accomplished through a series of sham transactions which had no economic purpose other than the evasion of income taxes.   Crockett was paid a fee for each such "loop" of funds.

4.   In connection with the transfer of funds from Shearer's domestic trust bank account to a bank account in Utah controlled by defendant Crockett in the name of Atlantic Telesis, Shearer received phony invoices, sent in the name of Atlantic Telesis at the

2

direction of Crockett, in amounts corresponding to the funds sent by Shearer to Crockett for routing through the offshore system of bank accounts.   The invoices purported to be for services rendered by Atlantic Telesis to Shearer's medical practice, when in truth and in fact, no such services with such value were rendered by Atlantic Telesis.

5.   The object of the cycling of funds through the various bank accounts was to conceal from the Internal Revenue Service the fact that such funds, which constituted U.S. income earned by Shearer through his medical practice, were being routed back to Shearer, and then used by Shearer for his personal benefit and enjoyment, without being reported to the IRS as income.   For each of the years 1996, 1997 and 1998, defendant Shearer had his medical practice pay him wages, which he reported to the IRS as income in tax returns for each of those years.   Such wages consisted of a small portion of the actual net income of his medical practice.   In each of those years, a much larger portion of his net income from his practice was concealed from the IRS through the system of accounts described above, and was not reported as income on the defendant's tax returns.

6.   Throughout the period of the conspiracy, defendant Shearer was aware that his co-conspirators Bullock and Pfeiffer were also using the Crockett system of domestic and offshore bank accounts to conceal from the IRS income which they earned from their medical practices.

7.   In furtherance of the conspiracy, on or about October 28,

3

1998, Richard Shearer caused a check for $225, payable to Farr West, to be written on the bank account of Strawberry Valley Family Trust, a trust controlled by Richard Shearer.

8.   On or about October 14, 1999, and pursuant to the conspiracy described above, defendant Shearer made and signed a 1998 joint U.S. Individual Income Tax Return, Form 1040.  The return was signed under penalty of perjury.  The return contained materially false information, that is, it reported taxable income of only $17,000, and did not report in excess of $100,000 in income to defendant Shearer that had been earned through Shearer's medical practice in the year 1998.  The defendant knew that the return materially understated his actual income, and acted willfully in subscribing to the false return.

9.   If the case were to proceed to trial, the Government would prove the foregoing through the testimony of investigating IRS Criminal Investigations Special Agents, the testimony of bank employees, accountants and other witnesses, and documents including copies of correspondence, memoranda, forms and other documents relating to the movement of funds as described above, bank account and bank wire transfer records, checks, and other evidence.

4

Exhibit 2



JOHN K. VINCENT
United States Attorney
BENJAMIN B. WAGNER
ROBIN R. TAYLOR
Assistant U.S. Attorneys
501 "I" Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2745

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>         Plaintiff, )<br><br>     v. )<br><br>DANIEL BULLOCK, )<br><br>         Defendant. ) | No. Cr. S-00-345 FCD<br><br>**PLEA AGREEMENT** |

## I.

## INTRODUCTION

**A.  Scope of Agreement:**  The Superseding Indictment in this case charges the defendant with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and four counts of making and subscribing to false tax returns in violation of 26 U.S.C. § 7206(1).  This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California (the "Government") and the defendant

1

regarding this criminal case.  The defendant understands
that nothing in this agreement affects the defendant's personal
federal tax liability, or restricts the United States or the
Internal Revenue Service from initiating any collection or civil
enforcement action relating thereto.

   **B  Charges:** Count One of the Superseding Indictment, to which
the defendant herein agrees to plead guilty, charges a violation of
section 371 of Title 18, conspiracy to defraud the United States,
and has the following three elements: (1) that the defendant agreed
with at least one other person to defraud the United States by
impeding, impairing, obstructing and defeating the functions of the
Internal Revenue Service in the ascertainment, computation,
assessment and collection of income taxes, through the use of
deceit, craft, trickery and other dishonest means, (2) that the
defendant joined the conspiracy knowing of its object and intending
to help accomplish it, and (3) that one of the members of the
conspiracy performed at least one overt act for the purpose of
carrying out the conspiracy.  Count Five of the Superseding
Indictment, to which the defendant herein agrees to plead guilty,
charges a violation of section 7206(1) of Title 26, making and
subscribing to a false tax return, and has the following four
elements: (1) that the defendant signed a tax return that contained
false information as to a material matter, that is, it understated
the defendant's income, (2) that the defendant knew that the
information was false, (3) that the return was signed subject to the
penalties of perjury, and (4) that the defendant acted willfully.

1    **D.  Court Not a Party:**  The Court is not a party to this Plea

2   Agreement.  Sentencing is a matter solely within the discretion of

3   the Court, the Court is under no obligation to accept any

4   recommendations made by the Government, and the Court may in its

5   discretion impose any sentence it deems appropriate up to and

6   including the statutory maximum stated in this Plea Agreement.  If

7   the Court should impose any sentence up to the maximum established

8   by the statute, the defendant cannot, for that reason alone,

9   withdraw his guilty plea, and he will remain bound to fulfill all of

10  the obligations under this Agreement.  The defendant understands

11  that neither the prosecutor, defense counsel, nor the Court can make

12  a binding prediction or promise regarding the sentence he will

13  

14  receive.

15                                **II.**

16                      **DEFENDANT'S OBLIGATIONS**

17    **A.  Guilty Pleas:**  The defendant will plead guilty to Count One

18  and Count Five in the Superseding Indictment, charging conspiracy to

19  defraud the United States in violation of 18 U.S.C. § 371, and

20  making and subscribing to a false tax return in violation of 26

21  U.S.C. § 7206(1).  The defendant agrees that he is in fact guilty of

22  these offenses and that the facts set forth in the Factual Basis

23  attached hereto as Exhibit A are accurate.

24  

25    **B.  Special Assessment:**  The defendant agrees to pay a special

26  assessment of $200.00 at the time of sentencing by delivering a

27  check or money order payable to the United States District Court to

28  

                                3

the United States Probation Office immediately before the sentencing hearing.   The defendant understands that this Plea Agreement is voidable by the Government if he fails to pay the assessment prior to that hearing.

**C.   Restitution:** Pursuant to 18 U.S.C. section 3663(a)(3), the defendant agrees to pay restitution to the Internal Revenue Service of $5,000, in partial satisfaction of his outstanding federal tax obligations to the IRS.   Such amount will be credited by the IRS against the principal amounts which the defendant owes IRS, in accordance with standard IRS procedure.   The defendant understands that this agreement does not relieve him from any legal obligation to pay additional amounts due and owing to the IRS.

### III.

### THE GOVERNMENT'S OBLIGATIONS

**A.   Dismissals:**   The Government agrees to move, at the time of sentencing, to dismiss with prejudice the counts against this defendant in the Indictment and the remaining counts against this defendant in the pending Superseding Indictment.

**B.   Acceptance of Responsibility Recommendation:**   If the United States Probation Office determines that a three-level reduction in the defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the Government will not oppose such a reduction.

**C.   Sentencing Recommendation:**   If the defendant qualifies for a three level reduction in his offense level for acceptance of

4

responsibility under section 3E1.1 of the sentencing guidelines, the Government will recommend that the defendant be sentenced in accordance with the stipulations set forth below, and at the low end of the applicable sentencing guideline range.

**D.   Other Charges:** The Government agrees not to criminally prosecute the defendant for any other violation of the federal tax laws which occurred during the period from January 1, 1995 to the present.

**E.   Future Practice of Profession:**  The Government agrees that it has no basis for opposing, and will not oppose, any application by the defendant to continue to practice medicine following the service of any prison term imposed in this case.  Upon request, the Government will provide a letter to that effect to any California State licensing board or other relevant professional regulatory body.

### IV.

### MAXIMUM SENTENCE

**A.  Maximum Penalty:**  The maximum sentence which the Court can impose on Count One is 5 years of incarceration, a 3 year period of supervised release, a fine of $250,000, and a special assessment of $100.  The maximum sentence which the Court can impose on Count Five is 3 years of incarceration, a 1 year period of supervised release, a fine of $250,000, and a special assessment of $100.

**B. Violations of Supervised Release:** The defendant understands and agrees that if he violates a condition of supervised release at

5

any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 2 additional years imprisonment.

## V.

## SENTENCING DETERMINATION

**A.  Statutory Authority:**  The defendant understands that a sentencing guideline range for this case will be determined by the Court pursuant to the Sentencing Reform Act of 1984 (18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998).  The defendant further understands that the Court will impose a sentence within that guideline range, unless the Court finds that there is a basis for departure (either above or below the range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.

**B.  Stipulations Affecting Guidelines Calculation:**  The Government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

   1.  **Base Offense Level:** The parties agree that the applicable guideline sections for establishing the base offense level are 2T1.9, 2T1.1, and 2T4.1, and that at an evidentiary hearing the Government is currently in a position to prove that the amount of presently determinable federal tax loss attributable to the defendant's offense conduct in this case,

and to his relevant conduct consisting of the federal tax loss associated with counts Two, Three and Four in the Superseding Indictment, and the federal tax loss associated with other clients of defendant Crockett's from Northern California during the period of the charged conspiracy which was reasonably foreseeable to the defendant, is between $200,000 and $325,000, resulting in a base offense level under USSG §2T1.1(a)(1) of 16.

2. **Specific Offense Characteristics:** The parties agree that the offense involved sophisticated concealment, in that it involved the use of false invoices and offshore bank accounts, resulting in another two-level increase pursuant to USSG §2T1.1(b)(2).

3. **Multiple Count Rules:** The parties agree that Counts 1 and 12 should be grouped together into a single unit for purposes of the multiple count rules in Chapter 3, Part D of the sentencing guidelines.

4. **Acceptance of Responsibility:** Assuming that the defendant satisfies the Probation Officer that he has accepted responsibility, the parties agree that the defendant should receive a three-level reduction for acceptance of responsibility pursuant to § 3E1.1.

5. **Other Adjustments:** The parties agree that no specific offense characteristics or adjustments apply to this defendant in this case other than those referenced above.

7

**6.  Sentencing Range:**  The parties agree that the defendant is a criminal history category I, that the total adjusted offense level pursuant to the foregoing stipulations is an offense level 15, and that the corresponding sentencing range is therefore 18 to 24 months in prison.

**C.  Departures:**  The parties agree that the Government shall not move for an upward departure from the otherwise applicable sentencing guideline range.

**VI.**

**WAIVERS**

**A.  Trial Rights:**  The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to confront and cross-examine witnesses against him; (e) to summon witnesses to testify in his defense; and (f) not to be compelled to incriminate himself.

**B. Waiver of Appeal and Collateral Attack:** Pursuant to this Plea Agreement, the defendant waives the right to appeal or otherwise collaterally attack his guilty plea, whether by way of a motion pursuant to 28 U.S.C. § 2255 or otherwise, and, if the defendant's sentence is consistent with the stipulations set forth above regarding the sentencing guidelines variables, he similarly waives his right to appeal or collaterally attack his sentence.

**C.  Waiver of Attorneys' Fees and Costs:** The defendant agrees

8

to waive all rights under the "Hyde Amendment", Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Agreement and any charges previously dismissed).

## VII.

### ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the Government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## VIII.

### APPROVALS AND SIGNATURES

**A.  Defense Counsel:**  I have read this Plea Agreement and have discussed it fully with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this Agreement.

DATED: ___10|1|01___          _____
                              JENNIFER PRAGER SODARO
                              Attorney for Defendant

9

1

2   **B.  Defendant:**  I have read this Plea Agreement including

3  Exhibit A and carefully reviewed every part of it with my attorney.

4  I understand it, and I voluntarily agree to it.  Further, I have

5  consulted with my attorney and fully understand my rights with

6  respect to the provisions of the Sentencing Guidelines which may

7  apply to my case.  No other promises or inducements have been made

8  to me, other than those contained in this Agreement.  In addition,

9  no one has threatened or forced me in any way to enter into this

10  Plea Agreement.  Finally, I am satisfied with the representation of

11  my attorney in this case.

12

13

14  DATED: _____10 | 1 | 01_____          _____
                                          DANIEL BULLOCK, Defendant

15

16

17

18

19   **C.  Attorney for United States:**

20      I accept and agree to this Plea Agreement on behalf of the

21  Government.

22

23  DATED: _____10 / 1 / 01_____

24                                      JOHN K. VINCENT
                                        United States Attorney
25

26

27                                  By:_____
                                        BENJAMIN B. WAGNER
28                                      Assistant U.S. Attorney

                                    10

Exhibit 3

ORIGINAL
FILED

DEC 3 1 2001

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

1  JOHN K. VINCENT
   United States Attorney
2  BENJAMIN B. WAGNER
   Assistant U.S. Attorneys
3  501 "I" Street, Suite 10-100
   Sacramento, California 95814
4  Telephone: (916) 554-2745

5

6

7              IN THE UNITED STATES DISTRICT COURT

8          FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10  UNITED STATES OF AMERICA,        )   CR S-00-345 FCD
                                     )
11              Plaintiff,           )   **GOVERNMENT'S OBJECTIONS TO**
                                     )   **PRESENTENCE REPORT, RESPONSE TO**
12        v.                         )   **DEFENDANT'S OBJECTION, AND**
                                     )   **SENTENCING MEMORANDUM**
13  RICHARD SHEARER,                 )
                                     )   Date: January 7, 2002
14              Defendant.           )   Time: 9:00 am
                                     )   Crtrm: 2
15  _____ )

16        The Government respectfully submits this memorandum in order to

17  set forth its objections to the presentence report for defendant

18  Richard Shearer, and to advise the Court of the Government's

19  sentencing recommendation.  The defendant is scheduled to be

20  sentenced on January 7, 2002.  Other than as indicated below, the

21  Government has no objection to any of the statements of fact,

22  guideline calculations, or policy statements contained in, or

23  omitted from, the presentence report.

24

25        The Probation Officer calculated that the total offense level

26  is 16, that the defendant's criminal history category is I, and that

27  the corresponding range is thus 21 to 27 months in prison.

28  Presentence report for defendant Richard Shearer, dated November 30,

                                1

1  2001 ("Shearer PSR") at ¶ 60.

2      The Probation Officer's guideline calculation was based on the

3  determination that the total tax loss attributable to defendant

4  Shearer consisted only of his own tax loss, in the amount of

5  $93,817. Shearer PSR ¶ 29.  Although the defendant pleaded guilty to

6  participating in a tax evasion conspiracy with his friends and co-

7  defendants Bullock and Pfeiffer, none of their tax loss was counted

8  as relevant conduct with respect to Shearer.   Pursuant to USSG

9  §2T1.4(a)(1) and §2T4.1(I), because the total tax loss amount was

10  more than $70,000 but less than $120,000, the base offense level was

11  calculated as a 14. Shearer PSR ¶ 29.

12      The Probation Officer then assessed a two level increase for

13  sophisticated means, pursuant to USSG §2T1.4(b)(2). Shearer PSR ¶

14  30.  Because the Probation Officer concluded that the defendant had

15  not accepted responsibility with the meaning of USSG §3E1.1, no

16  decrease in the offense level under that section was recommended.

17  Shearer PSR ¶ 32.   The total adjusted offense level, therefore, was

18  calculated as a level 16. Shearer PSR ¶ 33.

19

20      The Government agrees generally with the manner in which the

21  guideline range was calculated.   Its only objection is to the

22  Probation Officer's failure to count any of the tax loss associated

23  with co-defendants Bullock and Pfeiffer as relevant conduct for

24  defendant Shearer.   For the reasons set forth below, the Government

25  asserts that the evidence supports the inclusion of at least some

26  portion of Bullock and Pfeiffer's tax loss as relevant conduct

27  against Shearer, and that the Court should find that the total tax

28  loss attributable to Shearer from all sources is between $120,000

2

1   and $200,000, resulting in a base offense level of 15, one level

2   higher than the base offense level as calculated by the Probation

3   Officer.   The resulting total offense level would therefore be a

4   level 17 if the defendant receives no reduction for acceptance of

5   responsibility.

### I.   Objection to Base Offense Level -- ¶ 29

6

7         Pursuant to USSG §1B1.3, a defendant is accountable for "all

8   reasonably foreseeable acts" by his co-defendants in a conspiracy

9

10  that were in furtherance of the jointly undertaken criminal

11  activity.   USSG §1B1.3.   Here, although defendant Shearer pleaded

12  guilty to participating with his friends Daniel Bullock and Richard

13  Pfeiffer in a tax evasion conspiracy which lasted for years, the

14  Probation Officer assigned him no tax loss other than his own.

15  Shearer PSR ¶ 29.   By limiting the defendant's accountability to

16  only his own tax loss, the Probation Officer recommends no

17  punishment beyond what Shearer would be subject to as a result of

18  his guilty plea to the false tax return charge, count 15, thus

19  rendering the conspiracy conviction essentially meaningless.

20        Relevant conduct is not determined by the scope of "all acts

21  that were undertaken by the defendants in furtherance of the

22  conspiracy" as indicated in the presentence report. Shearer PSR ¶

23  27.   Rather, it is determined by reference to "all <u>reasonably</u>

24  <u>foreseeable acts</u> and omissions of others in furtherance of the

25  jointly undertaken criminal activity that occurred during the

26  commission of the offense of conviction," in preparation for the

27  offense, or in attempting to avoid detection for the offense. USSG

28

3

§1B1.3.   In determining the total tax loss attributable to an offense, "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme of plan unless the evidence demonstrates that the conduct is clearly unrelated." USSG §2T1.1, comment (n.2).

The Probation Officer's decision not to count any tax loss of Bullock or Pfeiffer as relevant conduct appears to turn on his conclusion that it does not appear that Shearer "profited from, or significantly assisted in" the others' conduct. Shearer PSR ¶ 27. That is not the proper measure of whether relevant conduct should be included in the tax loss calculation, however. From the guidelines quoted above, it seems clear that the only relevant issue is the scope of the conduct by others in furtherance of the conspiracy that was reasonably foreseeable to this defendant. The guidelines do not permit the Court the discretion to disregard relevant conduct which was reasonably foreseeable to this defendant but from which he did not directly profit. As many courts have noted, collective criminal action, such as a conspiracy, constitutes a greater danger to the public, and conspiracy defendants should be punished for the reasonably foreseeable acts of their co-conspirators in furtherance of the conspiracy.[1]

_____

[1]   The all-or-nothing approach to relevant conduct is also the source of the Government's objection to the base offense level with respect to both Bullock and Pfeiffer. As to Bullock, the Probation Officer counted <u>all</u> of the tax loss associated with Pfeiffer and Shearer as relevant conduct. As to Pfeiffer and Shearer, however, the Probation Officer assessed zero tax loss against the defendants beyond their own tax loss. This approach appears to ignore the calibrated, "reasonably foreseeable" approach mandated by the guidelines when apportioning loss among co-conspirators.

4

1   In this case, all three defendants pleaded guilty to

2   participating in a conspiracy, and the conspiracy was active for

3   several years.[2]   Shearer participated in numerous meetings with

4   Crockett, Bullock and Pfeiffer in which the functioning of the tax

5   evasion conspiracy was discussed.  As noted below, he was an officer

6   of one of Pfeiffer's trusts.  Some tax loss associated with

7   Shearer's co-defendants was clearly foreseeable to Shearer.

8   Accordingly, the total loss for Shearer should include both

9   Shearer's own tax loss, which as  noted in paragraph 29 of the

10   presentence report was $93,817, plus some significant additional

11   amount of tax loss associated with Bullock and Pfeiffer.

12   Determining the amount of Bullock and Pfeiffer's tax loss that

13   can be said to have been reasonably foreseeable to Shearer is not an

14   easy task, and cannot be determined with precision.  The guidelines

15   recognize that in many cases the amount of tax loss may be

16   uncertain, and they observe that "the guidelines contemplate that

17   the court will simply make a reasonable estimate based on the

18   available facts." USSG §2T1.1, comment (n.1).  See also USSG §2T1.9,

19   comment (backg'd)(Klein conspiracy "typically is complex and may be

20   far-reaching, making it quite difficult to evaluate the extent of

21   the revenue loss caused.")

22   Viewing the evidence in the light most favorable to the

23   defendant, Shearer  must have known that if his own tax loss was

24   nearly $95,000, that of his two co-defendants would have been at

25

26

27   _____

28   [2]       Even before the conspiracy charged in this case, Shearer
was active with Bullock and Pfeiffer in a separate tax evasion
conspiracy headed by Ed Cox of Florida, to whom Shearer refers in
his "Statement of the Offense," attached to the Shearer presentence
report.

5

least that much again, for a total tax loss of nearly $200,000.
There is no evidentiary basis to claim, however, that he must have
known that the total loss for all three of them would have been over
$200,000.  That determination was the basis for the stipulation in
the plea agreement, which calls for a finding that the total tax
loss, including relevant conduct, was between $120,000 and $200,000.
Shearer Plea Agreement at VB1.

The Government therefore objects to the determination at
paragraph 29 of the presentence report that the total tax loss is
limited to the $93,817 associated with Shearer's own tax returns,
and thus is less than $120,000.  In the Government's view, the total
tax loss attributable to this defendant should be more than $120,000
but less than $200,000, for a base offense level of 15.  Such a
finding comports with the plea agreement, and is warranted by a
reasonable reading of the known facts.

The Government otherwise agrees with the sentencing guideline
calculations in the presentence report.  If the Government's
objection is sustained, therefore, the total offense level would be
a level 17, and the corresponding sentencing guideline range would
be 24 months to 30 months in prison.

## II. Response to Defendant's Objection

As noted above, the Probation Officer did not recommend a
reduction for acceptance of responsibility, and the defendant has
objected to that recommendation. Objection to Sentencing Report for
Defendant Shearer, received December 31, 2001 ("Shearer Mot.").  The
Government's response follows.

1    In order to qualify for a sentence reduction under USSG §3E1.1,

2  however, the defendant must "clearly demonstrate[] acceptance of

3  responsibility for his offense." USSG §3E1.1(a).  Such conduct must

4  include truthfully admitting the conduct comprising the offenses of

5  conviction. USSG §3E1.1, comment. (n.1(a)).  The offenses of

6  conviction in this case both include a mens rea element of intent to

7  defraud. 18 U.S.C. § 371; 26 U.S.C. § 7206(1).  As to this aspect of

8  the offense -- the critical element -- Dr. Shearer's statements

9  since the entry of his plea affirmatively reject any acceptance of

10  responsibility.  The Probation Officer's recommendation is well

11  supported by the record.

12    In his statements to the press since his conviction, in his

13  statement to the Probation Officer, in the "Statement of the

14  Offense" submission attached to the presentence report, and in his

15  recent motion, Shearer concedes only that he relied on bad advice or

16  exercised bad judgment. Shearer Mot. at 3; Shearer PSR ¶¶ 22, 23,

17  32.  The content of the many character reference letters received by

18  the Court on Dr. Shearer's behalf also make it clear that he has

19  been telling his community that he only relied on bad advice or

20  exercised poor judgment.  Defendant Shearer's statement contrasts,

21  in particular, with co-defendant Bullock's statement, in which

22  Bullock acknowledges that he engaged in fraudulent conduct, allowing

23  antagonism toward the IRS and greed to dictate his priorities.

24    The Government responds below to Dr. Shearer's "Statement of

25  the Offense" attached to the presentence report.

26    Shearer's claims that he did not know that his conduct

27  constituted illegal tax evasion until his meeting in this office in

7

1   September 2001 (which took place over a year after he was indicted,

2   in an indictment that spelled out the scheme in detail), is simply

3   not credible.  His self-serving statement is intended to place on

4   others the blame that he should be shouldering himself.

5       First, Dr. Shearer was previously involved in a similar tax

6   evasion scheme involving Ed Cox.  Dr. Shearer well knew that Cox was

7   shut down by law enforcement -- he received a mailing from the FBI

8   indicating that Mr. Cox was the subject of a criminal investigation,

9   and Lonnie Crockett has told the Government that Shearer and the

10  others openly discussed the fact that Cox was headed for jail.  In

11  light of these facts, Shearer's dismissal of Cox as someone that was

12  merely hard to communicate with does not tell the whole story.

13

14      Second, Dr. Shearer spent funds returned from the offshore

15  system on his own personal benefit, and he himself decided how much

16  of his own actual income to report in each calendar year.  It is not

17  credible that he believed that under the U.S. federal tax system he

18  could spend any amount of money he had earned for his own purposes,

19  and make his own assessment as to how much income to report each

20  year.

21      Third, the thrust of Dr. Shearer's statement, that he merely

22  relied on Crockett for administration of a system that Shearer

23  believed was lawful and legitimate, is contradicted by the facts.

24  The assertion at the second page of his statement that this system

25  of multiple bank accounts was intended to "maintain a paper trail so

26  that everything could be accounted for," is outrageous.  Dr. Shearer

27  has never cooperated with the IRS or anyone else trying to follow

28  the money trail, and he knew perfectly well that the system was

8

1 designed to mask, not elucidate, the true nature of the
2 transactions.

3    Attached hereto as Exhibit A are several examples of phony
4 invoices from Atlantic Telesis which Shearer received in response to
5 sending the attached checks to Crockett for routing through the
6 offshore system.  The invoices purport to bill Shearer for "business
7 consulting and planning," "business management" and other
8 "professional services."  Shearer knew that in fact he had never
9 received any such services from Atlantic Telesis, and that the
10 invoices merely came in response to, and in the same amount of, the
11 money he had sent offshore.  Moreover, far from paying for such
12 services, Shearer fully expected to receive that money back, less a
13 small fee to Crockett.  An intent to obfuscate could hardly be more
14
15 clear.

16    Similarly, with reference to back dating documents, Shearer
17 claims towards the bottom of the first page of his statement that
18 only an address correction for EIN purposes made it "appear" that a
19 trust created by Crockett was backdated.  In fact, Shearer knew that
20 trust documents created by Crockett were backdated.  Shearer claims
21 on the first page that he learned about Crockett through an article
22 in the July/August 1995 issue of Preparedness Journal, which is
23 attached as Exhibit A to his statement.  He says he only contacted
24 Crockett sometime after reviewing that article.  Attached as Exhibit
25 B hereto, however, is the signature page of a trust document
26 relating to a Pfeiffer trust created by Crockett (and notarized by
27 one of his associates, David Orr) in which Shearer was an officer
28 (the "Protector").  That trust, like the many others created for

9

these defendants by Lonnie Crockett, was backdated to January 1, 1995 -- a time period before Shearer says he even met Crockett.

Fourth, while he claims that he was relatively isolated in Northern California, he makes an effort to show that he had done research to support his view that the system was legal. His claim, and the attachments to his statement, merely show that he was capable of inquiring as to the legality of the offshore tax evasion system and of understanding that the system he entered into was fraught with peril. Indeed, one of the attachments, Exhibit G to his statement, plainly put him on notice as to the illegality of the system. The last three substantive paragraphs of the letter from the IRS point Dr. Shearer directly to relevant statutes that would have demonstrated the illegality of the Crockett offshore system. The letter states that, under section 672(f) of the Internal Revenue Code, a U.S. beneficiary of a foreign trust is treated as an owner of the trust for tax purposes if he makes a gift to the foreign grantor of the trust. It also indicates that under section 679, a U.S. person who transfers property to a foreign trust is taxed as the owner of that money if there is a U.S. beneficiary of that foreign trust. The attachments to his statement merely confirm that he decided to follow only those authorities which it was in his own financial interest to follow.

Finally, while Shearer purports to have been dazzled by the words "advice of counsel," there is no evidence that he ever sought his own qualified tax counsel before sending tens of thousands of dollars to Lonnie Crockett. Instead, he claims that he merely accepted Crockett's assurances, when Crockett relayed to him that

10

1   his system had been blessed by other attorneys whom Shearer did not

2   know.   Crockett, as Shearer well knew, was not independent -- he was

3   selling Shearer a service.   Shearer's claim that he merely relied on

4   Crockett's assurances of legality, particularly after the bad

5   experience Shearer describes with Cox, rings false.   Shearer seems

6   determined not to admit what he must have known to be true: he

7   willingly participated in sham transactions to defraud the IRS.

8       The only remorse expressed by Dr. Shearer is that he is in a

9   predicament caused, in part, by his dealings with co-defendant

10  Crockett.   He nowhere admits that he acted with intent to defraud

11  his Government.   Rather than accepting responsibility for his

12  fraudulent conduct, Shearer attempts to displace all blame on to co-

13  defendant Crockett.   He has clearly failed to manifest acceptance of

14  responsibility within the meaning of USSG §3E1.1.

15

16                      III.   **Restitution**

17      The offenses of conviction are not offenses to which mandatory

18  restitution attaches, and in any event the principal amount of the

19  back taxes owed by defendant Shearer to the IRS has not yet been

20  determined with specificity.   The parties stipulated in the plea

21  agreement, however, pursuant to 18 U.S.C. § 3663(a)(3), that the

22  defendant would pay $5,000 to the IRS in partial satisfaction of the

23  federal income taxes he owes.   Shearer Plea Agreement IIC.   The

24  Probation Officer reported that the defendant had a net worth of

25  $753,463, disposable income of nearly $1600 per month, and insurance

26  assets. Shearer PSR ¶¶ 54-56.   Nonetheless, the Probation Officer

27  did not follow the stipulation in the plea agreement and recommend

28  restitution, observing only that "the IRS has the resources to

11

1  collect any monies owed by the defendant." Shearer PSR ¶ 58.  The

2  Probation Officer did recommend a fine in the amount of $22,500. PSR

3  ¶ 69.

4       The Government objects to the Probation Officer's decision not

5  to recommend any restitution.  The fact that the IRS has the

6  capability of pursuing restitution is an irrelevant consideration.

7  Many other victims in other types of cases also have the capability

8  of pursuing civil remedies to obtain restitution.  General

9  considerations relating to the ordering of restitution are not

10  suspended in criminal tax cases, when the Government is the victim.

11  Moreover, the IRS has been unsuccessful in obtaining tax payments

12  from Shearer in recent years; his plea of guilty in this case does

13  not insure the swift collection of back taxes.

14

15       Section 5E1.1(a)(1) of the sentencing guidelines states that

16  the court "shall enter a restitution order for the full amount of

17  the victim's loss, if such order is authorized under 18 U.S.C. . . .

18  § 3663 . . ."  Section 3663(a)(3) states that the court may order

19  restitution "to the extent agreed to by the parties in a plea

20  agreement."  As noted above, in the plea agreement for this

21  defendant in this case, the parties expressly agreed "[p]ursuant to

22  18 U.S.C. section 3663(a)(3)," that the defendant would pay

23  restitution of $5,000 to the IRS.  Section 5E1.1(a)(1) therefore

24  appears to require that restitution be ordered to the extent that

25  the parties have agreed to it under section 3663(a)(3).

26       While it is clear that the defendant owes far more than $5,000,

27  it is indisputable that he owes at least that much, and in order to

28  avoid the necessity for a full multiple year IRS audit in the

12

context of this proceeding, mandating partial payment of his debt as restitution is proper.  The defendant clearly has the ability to pay restitution, and payment of some amount now would ameliorate some of the harm caused by the defendant.  Payment of restitution in the amount of $5,000 would also stop the accrual of interest and penalties on that amount of back taxes.

While the Government believes that the recommended fine is in accordance with the sentencing guidelines, in the Government's view is more important that the IRS be made whole than the full fine be paid to another agency of the Government.  The Government notes that in determining the amount of the fine, the court must consider any restitution payments that the defendant is obligated to make. USSG §5E1.2(d)(4).  The Government would not object to a $5,000 reduction in the amount of the recommended fine in order to enable the defendant to pay restitution in that amount.

### IV.   Government's Sentencing Recommendation

In accordance with the Plea Agreement, the Government recommends that the defendant be sentenced at the low end of the guideline sentencing range, after the determination of the final guideline sentencing range following ruling on the objections addressed above.  The prison term should be imposed on each count, to run concurrently.  A three year term of supervised release is recommended.  The Government does not object to a reasonable self-surrender date.

The Government also recommends that the defendant be ordered, pursuant to 18 U.S.C. § 3663(a)(3) and USSG §5E1.1(a)(1), to pay

13

1  $5,000 restitution to the IRS, and that he be ordered to pay the

2  minimum fine.

3        Finally, the defendant should be ordered to pay a special

4  assessment of $200, and costs of prosecution (which are mandatory

5  under 26 U.S.C. § 7206(2)) of $1,381.75.  A Bill of Costs and

6  supporting documentation for that amount has been filed.

7

8                                        Respectfully submitted,

9
   DATED: December 31, 2001              JOHN K. VINCENT
10                                        United States Attorney

11

12                               By: _____
                                        BENJAMIN WAGNER
13                                       Assistant U.S. Attorney

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

**Atlantic Telesis Mgmt. Co. Trust**
**144 West Parrish Lane #124**
**Centerville, UT 84014**

TO:   Asteroid Black Mgt. Co. Trust
      717 Michelle Drive
      Mt. Shasta, CA 96067

INVOICE:01102489
PAGE: 1
DATE: 04/15/98

---

| 04/15/98 | Business management | 5,000.00 |
|---|---|---|

**TOTAL BALANCE DUE: $5,000.00**

---

**\*\*\*Please Pay Upon Receipt.  Thank You!!\*\*\***

MT. SHASTA EAR, NOSE, & THROAT
MEDICAL OFFICE
701 PINE STREET
MT. SHASTA, CA 96067

TIMBERLINE COMMUNITY BANK
MOUNT SHASTA, CA 96067
90-3780/1211

2865

4/20/98

PAY TO THE
ORDER OF     ATLANTIC TELESIS MANAGEMENT CO. TRUST                    $   ****5,000.00

Five          thousand      and     00/100 **************************************  DOLLARS

ATLANTIC TELESIS MANAGEMENT CO
144 WEST PARRISH LANE
SUITE 124
CENTERVILLE, UTAH  84014

MEMO                                                           TWO SIGNATURES REQUIRED

⑈00 2865⑈  ⑆121137807⑆           0008500655⑈

# Atlantic Telesis Mgmt. Co. Trust
## 144 West Parrish Lane #124
## Centerville, UT 84014


TO:    Asteroid Black Mgt.Trust           INVOICE:011025608
      717 Michelle Dr.                        PAGE: 1
      Mt. Shasta, CA  96067                 DATE: 05/1/98

---

5/19/98    Business Consultation and Planning           $ 5,000.00

**TOTAL BALANCE DUE:  $5,000.00**

---

**\*\*\*Please Pay Upon Receipt.  Thank You!!\*\*\***



Asteroid

03

5/14 1998

90-3780/1211

Pay to
the order of. Atlantic Telesis                    $ 5,000.00

Five thousand only                              DOLLARS

TIMBERLINE
COMMUNITY BANK
309 N. MOUNT SHASTA BLVD., P.O. BOX 299
MOUNT SHASTA, CALIFORNIA 96067

FOR _____                By Daniel B. Cook Trustee

⑆121137807⑆ 0008501653⑈



**Transaction Receipt**          **BANK ONE**
                                   To One!
FIRST LINE SHOWS:    Bank #   Branch #   Teller #   Sequence #   Post Date   Time

        0032 00285 06                1084 05/19/1998 13:31      Atlantic Telecom
        ACCT# 13659429
        CHECKING DEPOSIT
                                         $23,000.00             Siskiyou  10,000
                                                                Asteroid   5000
                                         05/19/1998             Maverick   8000
                                                                  $ 23000
            Type of Transaction
This transaction record should be retained until you have verified it with your statement.        Calendar Date
All items received are subject to terms and conditions as posted in this bank.      Amount
                                                                Catalog # 07048 Rev 10/97

## Atlantic Telesis Mgmt. Co. Trust
### 144 West Parrish Lane #124
### Centerville, UT 84014

TO:  Asteroid Black Mgt. Trust
     717 Michelle Dr.
     Mt. Shasta, CA  96067

INVOICE:011025615
PAGE: 1
DATE: 5/8/98

---

5/8/98   Business Consultation and Planning          $3,000.00

**TOTAL BALANCE DUE:  $3,000.00**

---

**\*\*\*Please Pay Upon Receipt.  Thank You!!\*\*\***



ASTEROID BLACK MANAGEMENT C.. TRUST (II)    0008501653
701 PINE ST.
MOUNT SHASTA, CA  96067
                                        DATE  5/28/98

PAY TO THE
RDER OF  Atlantic Telesis Management Co. I  $ 3,000.00

Three thousand dollars only ——→ DOLLARS

**TIMBERLINE**
COMMUNITY BANK
309 N. MOUNT SHASTA BLVD., P.O. BOX 299
MOUNT SHASTA, CALIFORNIA  96067

MEMO _____            By Daniel Bulloch, Trustee

⑈121137807⑈0101  0008501653⑈

TOTAL
DEPOSIT  3000 00

⑈532450160⑈    913659429⑈



**BANK ONE**
To One.

**Transaction Receipt**

BCT LINE SHOWS:    Bank #    Branch #    Teller #    Sequence #    Post Date    Time

                                         6594  06/02/1998  09:21
        0032 00285 02
        ACCT# 13659429                    $3,000.00
        CHECKING DEPOSIT
                                         06/02/1998

        Type of Transaction            Amount          Calendar Date
                                                        Catalog # 67048 Rev. 10/97
This transaction record should be retained until you have verified it with your statement.
All items received are subject to terms and conditions as posted in this bank.

**Atlantic Telesis Mgmt. Co. Trust**
**144 West Parrish Lane #124**
**Centerville, UT 84014**

TO:  Asteroid Black Management Co. Trust
     717 Michelle Dr.
     Mt. Shasta, CA  96067

INVOICE:011025641
PAGE: 1
DATE: 6/1/98

---

6/1/98   Business Consultation and Planning          $5,000.00

TOTAL BALANCE DUE:  $5,000.00

---

***Please Pay Upon Receipt.  Thank You!!***



ASTEROID BLACK MANAGEMENT, J. TRUST (II)

90-37807 1211
0008501653

ASTEROID BLACK MANAGEMENT, J. TRUST (II)
701 PINE ST.
MOUNT SHASTA, CA  96067

DATE 6/10/98

PAY TO THE
ORDER OF ___Atlantic Telesis_____ | $ 5,000.00

Five thousand dollars only _____ DOLLARS

**TIMBERLINE**
COMMUNITY BANK
309 N. MOUNT SHASTA BLVD. P.O. BOX 299
MOUNT SHASTA, CALIFORNIA 96067

MEMO _____ By David Bullock, Trustee

⑆1211 37807⑆ ⑈0103  0008501653⑈



**BANK≣ONE**
To One.

**Transaction Receipt**

1ST LINE SHOWS:   Bank #   Branch #   Teller #   Sequence #   Post Date   Time

0032 00285 01          4355 06/15/1998 12:43
ACCT# 13659429                        $5,691.00
CHECKING DEPOSIT
                                      06/15/1998

                          Amount                    Calendar Date
Type of Transaction                                 Catalog # 07048 Rev. 10/97

This transaction record should be retained until you have verified it with your statement.
All items received are subject to terms and conditions as posted in this bank.



ASTEROID BLACK MANAGEMENT CO. TRUST (II)          90-3780/1211          **120**
701 PINE ST.                                       0008501653
MOUNT SHASTA, CA 96067

DATE 8/18/98

PAY TO THE
ORDER OF  Atlantic Telesis Mgmt. Co. Tr.   $ 23,000.00

Twenty-three thousand only ─────────────── DOLLARS

**TIMBERLINE**
COMMUNITY BANK
309 N. MOUNT SHASTA BLVD., P.O. BOX 299
MOUNT SHASTA, CALIFORNIA 96067

MEMO _____

By Laurel Ballard, Trustee

⑆121137807⑆⑇0120   0008501653⑆

**L. Richard Shearer, M.D.**
Ear, Nose & Throat Specialist
Comprehensive care for your entire family



Atlantic Telesis Management Co.
144 West Parrish Lane, Suite 124
Centerville, Utah   84014

84014=1521

Atlantic Telesis Mgt Co Trust
144 West Parrish Lane #124
Centerville, UT 84014


TO:   Asteroid Black Mgt Trust
      717 Michelle Drive               Invoice No.   00000341
      Mt. Shasta, CA 96067             Date          11/20/98

---

8/18/98              Professional Services Rendered              $23,000.00


Thank you!

$23,000.00
$0.00
$23,000.00

**EXHIBIT B**

BRACKET FAMILY HOLDING TRUST

## PROTECTOR'S AGREEMENT

This agreement is entered into between HOLLY HAWKINS, the Settlor of BRACKET FAMILY HOLDING TRUST, a Private Trust, and L. RICHARD SHEARER. In acceptance of this appointment, the Protector, L. RICHARD SHEARER, does hereby agree that he accepts the following powers and none other:

(a)     The power to remove a Trustee with the unanimous vote of any remaining Trustee(s), not including successor(s); and the power to approve the selection and appointment of successor Trustee(s) without the concurrence of any other parties. The Protector shall also (in accordance with Section 11.1) approve the selection of three (3) independent parties, chosen by the Trustee(s), who shall constitute a Committee of Arbitrators for the purpose of resolving deadlocks and/or disagreements. (See Section 11.1.)

(b)     The power or right to resign, at anytime, by delivering to a new or Successor Protector his letter of resignation. (The Protector may not resign until a new Protector is chosen and appointed by the same with the Trustee(s) being informed of the appointment.) The letter of resignation and new Protector's Agreement and appointment shall be maintained by the Trust record keeper in the Trust records. Any third party to whom the letter of resignation is shown may rely upon the validity of that letter as the true state of affairs with respect to this Trust.

(c)     In the event any Trustee is unavailable to participate in the process of his or her removal, or the selection of a Successor Trustee, the Protector shall have the authority to execute an affidavit, under oath, setting forth the unavailability of the Trustee. The affidavit shall be filed in the official records of this Trust and a copy of the affidavit shall be mailed by certified mail to the last known address of the Trustee. The affidavit shall be filed with the local recorder's office wherein the Trust is currently domiciled. The execution of the affidavit and appointment by the Protector of a Successor Trustee shall be done simultaneously.

(d)     The Protector shall have no other powers.

**IN WITNESS WHEREOF,** the Settlor, HOLLY HAWKINS, and the Protector, L. RICHARD SHEARER, do hereby affix their signature on this, the 1st day of January, 1995.

SETTLOR:

By: _____
HOLLY HAWKINS

STATE OF _Utah_ )
                            )SS
COUNTY OF _Salt Lake_ )

SUBSCRIBED AND SWORN to before me, a notary public, on this the 1st day of January, 19 95.

My Commission Expires:                    _____
                                                          NOTARY PUBLIC

_1-24-98_

> Notary Public
> DAVID J. ORR
> 525 East 4500 South #F-100
> Salt Lake City, Utah 84107
> My Commission Expires
> January 24, 1998
> State of Utah

PROTECTOR:

By: _____
L. RICHARD SHEARER

STATE OF _Utah_ )
                            )SS
COUNTY OF _Salt Lake_ )

SUBSCRIBED AND SWORN to before me, a notary public, on this the 1st day of January, 19 95.

My Commission Expires:                    _____
                                                          NOTARY PUBLIC

_1-24-98_

> Notary Public
> DAVID J. ORR
> 525 East 4500 South #F-100
> Salt Lake City, Utah 84107
> My Commission Expires
> January 24, 1998
> State of Utah

1

000195

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Eastern District of California and is a person of such age and discretion to be competent to serve papers.

That on December 31, 2001, he served a copy of the attached Government's Objection to Presentence Report, Response to Defendant's Objection and Sentencing Memorandum by placing said copy in a postage paid envelope addressed to the person hereinafter listed, and by depositing said envelope in the United States mail at Sacramento, California, and by fax to the number below.  In addition, he served a copy on the Probation Officer by Inter-Office delivery.

SERVED BY MAIL                    SERVED BY INTER-OFFICE DELIVERY

Matthew Gilmartin, Esq.
P.O. Box 939
N. Olmstead, OH 44070-0939

fax: (216) 485-0800

                              Philip R. Hendley, Jr.
                              U.S. Probation Office
                              501 "I" Street, Suite 2500
                              Sacramento, CA 95814

BENJAMIN B. WAGNER

15

```
 1  JOHN K. VINCENT
    United States Attorney
 2  BENJAMIN B. WAGNER
    Assistant U.S. Attorneys
 3  501 "I" Street, Suite 10-100
    Sacramento, California 95814
 4  Telephone: (916) 554-2745
```

DEC 3 1 2001

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

```
 5
 6
 7              IN THE UNITED STATES DISTRICT COURT
 8           FOR THE EASTERN DISTRICT OF CALIFORNIA
 9
10  UNITED STATES OF AMERICA,    )  CR S-00-345 FCD
                                 )
11              Plaintiff,       )  GOVERNMENT'S OBJECTIONS TO
                                 )  PRESENTENCE REPORT AND
12        v.                     )  SENTENCING MEMORANDUM
                                 )
13  DANIEL BULLOCK,              )  Date: January 7, 2002
                                 )  Time: 9:00 am
14              Defendant.       )  Crtrm: 2
                                 )
15
```

16        The Government respectfully submits this memorandum in order to

17  set forth its objections to the presentence report for defendant

18  Daniel Bullock, and to advise the Court of the Government's

19  sentencing recommendation.  The defendant is scheduled to be

20  sentenced on January 7, 2002.  Other than as indicated below, the

21  Government has no objection to any of the statements of fact,

22  guideline calculations, or policy statements contained in, or

23  omitted from, the Presentence Report.

24        The Probation Officer calculated that the total offense level

25  is 16, that the defendant's criminal history category is I, and that

26  the corresponding range is thus 21 to 27 months in prison.

27  Presentence report for defendant Daniel Bullock, dated December 21,

1  2001 ("Bullock PSR") at ¶ 64.

2      The Probation Officer's guideline calculation was based on the

3  determination that the total tax loss attributable to defendant

4  Bullock consisted of (1) his own tax loss, in the amount of $152,256

5  (Bullock PSR ¶ 29), and (2) tax loss associated with co-defendants

6  Pfeiffer and Shearer, which is attributable to Bullock as relevant

7  conduct under USSG § 1B1.3, of (a) $139,840 in tax loss associated

8  with co-defendant Pfeiffer (Bullock PSR ¶ 30), and (b) $93,817 in

9  tax loss associated with co-defendant Shearer (Bullock PSR ¶ 31).

10  The total tax loss counted against defendant Bullock, therefore, was

11  the sum of those three amounts, or $385,913. Bullock PSR ¶ 32.

12  Pursuant to USSG §2T1.4(a)(1) and §2T4.1(L), because the total tax

13  loss amount was more than $325,000 but less than $550,000, the base

14  offense level was calculated as a 17. Bullock PSR ¶ 32.

15

16      The Probation Officer then assessed a two level increase for

17  sophisticated means, pursuant to USSG §2T1.4(b)(2), and awarded a

18  three level increase for acceptance of responsibility under USSG

19  §3E1.1. Bullock PSR ¶¶ 33-36.  The total adjusted offense level,

20  therefore, was calculated as a level 16. Bullock PSR ¶ 37.

21      The Government agrees generally with the manner in which the

22  guideline range was calculated.  Its only objection is to the scope

23  of the tax loss associated with co-defendants Pfeiffer and Shearer

24  which was included as relevant conduct as to defendant Bullock.  For

25  the reasons set forth below, the Government asserts that the

26  evidence does not support the inclusion of all of Pfeiffer and

27  Shearer's tax loss as relevant conduct against Bullock, and that the

28  Court should find that the total tax loss attributable to Bullock

2

from all sources is between $200,000 and $325,000, resulting in a base offense level of 16, one level lower than the base offense level as calculated by the Probation Officer. The resulting total offense level would therefore be a level 15.

## I.   Objection to Base Offense Level -- ¶¶ 25-32

The Government agrees that, pursuant to USSG §1B1.3, the loss amount attributable to defendant Bullock should include both his own tax loss and relevant conduct which constitutes "all reasonably foreseeable acts" by co-defendants Pfeiffer and Shearer that were in furtherance of the jointly undertaken criminal activity. All three defendants pleaded guilty to participating in a conspiracy, and Bullock was clearly active both in creating his own tax loss and in assisting the other defendants with the administration of the trusts they used in the course of the conspiracy. As the Probation Officer observed in the Presentence Report, there is no doubt that Bullock assisted his co-defendants in carrying out the conspiracy and personally profited -- although to a minor degree -- from his role as a trustee for the co-defendants' trusts which facilitated the unlawful conduct. Bullock PSR ¶ 27. Accordingly, the total loss for Bullock should include both Bullock's own tax loss, which the Probation Officer identified in paragraph 29 of the Presentence Report was $152,256, plus some significant additional amount of tax loss associated with Pfeiffer and Shearer.

The Government's point of departure from the Presentence Report, however, is that simply adding the total tax loss for Pfeiffer and Shearer to the total for Bullock is neither a fair or

accurate method of determining the total tax loss.  The relevant

conduct that should be counted against Bullock is that tax evasion

conduct by the co-defendants which was "reasonably foreseeable" to

Bullock.[1]  While it may be difficult to arrive at a precise dollar

figure for the amount of co-conspirator tax loss that was reasonably

foreseeable to defendant Bullock, that is not a reason to simply

pile on all of his co-defendants' tax loss as relevant conduct under

USSG §1B1.3.

It is important to note that while Bullock assisted the other

defendants in administering their trusts, and knew of their

participation in the tax evasion scheme, there is no evidence that

he was knowledgeable about their annual income, that he reviewed

their tax returns, or that he gave them any advice as to how much of

their annual income they should conceal.  Indeed, there is no

evidence that Bullock ever even saw the personal federal tax returns

for Pfeiffer and Shearer.  Those defendants decided independently

how much of their income to report to the IRS and how much to

conceal.  Bullock certainly knew that in the course of the

conspiracy, Pfeiffer and Shearer would evade a substantial amount of

federal income taxes.  The Government does not believe that the

evidence supports a finding that Bullock could have reasonably

foreseen that Pfeiffer would be responsible for $139,840 in tax

loss, and that Shearer would be responsible for $93,817 in tax loss

---

[1]     The all-or-nothing approach to relevant conduct is also
the source of the Government's objection to the base offense level
with respect to both Pfeiffer and Shearer.  In those cases, the
Probation Officer assessed zero tax loss against the defendants
beyond their own tax loss.  This approach appears to ignore the
calibrated, "reasonably foreseeable" approach mandated by the
guidelines when apportioning loss among co-conspirators.

4

(PSR ¶¶ 30-31).

As noted above, determining the amount of Pfeiffer and Shearer's tax loss that can be said to have been reasonably foreseeable to Bullock is not an easy task, and cannot be determined with precision.  The guidelines recognize that in many cases the amount of tax loss may be uncertain, and they observe that "the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts." USSG §2T1.1, comment (n.1). See also USSG §2T1.9, comment (backg'd)(Klein conspiracy "typically is complex and may be far-reaching, making it quite difficult to evaluate the extent of the revenue loss caused.")

Viewing the evidence in the light most favorable to the defendant, he must have known that if his own tax loss was over $150,000, that of his two co-defendants, whom he knew to be medical professionals who were concealing a substantial portion of their income, would have been at least that much again, or in the vicinity of over $300,000.  There is no evidentiary basis to claim, however, that Bullock must have known that the total tax loss for all three of them would have been over $325,000.  That determination was the basis for the stipulation in the plea agreement, which calls for a finding that the total tax loss, including relevant conduct, was between $200,000 and $325,000. Bullock Plea Agreement at VB1.

The Government therefore objects to the determination at paragraphs 25-32 of the presentence report that the total tax loss, including relevant conduct, is more than $325,000 and less than $550,000.  In the Government's view, the total tax loss attributable to this defendant should be more than $200,000 but less than

1   $325,000, for a base offense level of 16.   Such a finding comports

2   with the plea agreement, and is warranted by a reasonable reading of

3   the known facts.

4        The Government otherwise agrees with the sentencing guideline

5   calculations in the Presentence report.[2]   If the Government's

6   objection is sustained, therefore, the total offense level would be

7   a level 15, and the corresponding sentencing guideline range would

8   be 18 months to 24 months in prison.

9                    II.   **Restitution**

10       The offenses of conviction are not offenses to which mandatory

11  restitution attaches, and in any event the principal amount of the

12  back taxes owed by defendant Bullock to the IRS has not yet been

13  determined with specificity.   The parties stipulated in the plea

14  agreement, however, pursuant to 18 U.S.C. § 3663(a)(3), that the

15  defendant would pay $5,000 to the IRS in partial satisfaction of the

16  federal income taxes he owes.   Bullock Plea Agreement IIC.   The

17  Probation Officer reported that the defendant had a net worth of

18  $137,518, disposable income of over $1,300 per month, and retirement

19  and insurance assets. Bullock PSR ¶¶ 59-61.   Nonetheless, the

20  Probation Officer did not follow the stipulation in the plea

21  agreement and recommend restitution, observing only that "the IRS

22  has the resources to collect any monies owed by the defendant."

23  Bullock PSR ¶ 62.   The Probation Officer did recommend a fine in the

24

25

26      [2]   The Government notes that it specifically agrees with the
    Probation Officer's determination that Bullock has accepted
27  responsibility for his conduct, and that it was impressed with the
    frankness of the statement by defendant Bullock in that regard.
28  Bullock's statement contrasts sharply with that of defendant
    Shearer, who continues to eschew responsibility for his unlawful
    conduct.

1  amount of $22,500. PSR ¶ 72.

2      The Government objects to the Probation Officer's decision not

3  to recommend any restitution.  The fact that the IRS has the

4  capability of pursuing restitution is an irrelevant consideration.

5  Many other victims in other types of cases also have the capability

6  of pursuing civil remedies to obtain restitution.  General

7  considerations relating to the ordering of restitution are not

8  suspended in criminal tax cases, when the Government is the victim.

9  Moreover, the IRS (and the California Franchise Tax Board) have been

10  unsuccessful in obtaining tax payments from Bullock in recent years;

11  his plea of guilty in this case does not insure the swift collection

12  of back taxes.

13      Section 5E1.1(a)(1) of the sentencing guidelines states that

14  the court "shall enter a restitution order for the full amount of

15  the victim's loss, if such order is authorized under 18 U.S.C. . . .

16  § 3663 . . ."  Section 3663(a)(3) states that the court may order

17  restitution "to the extent agreed to by the parties in a plea

18  agreement."  As noted above, in the plea agreement for this

19  defendant in this case, the parties expressly agreed "[p]ursuant to

20  18 U.S.C. section 3663(a)(3)," that the defendant would pay

21  restitution of $5,000 to the IRS.  Section 5E1.1(a)(1) therefore

22  appears to require that restitution be ordered to the extent that

23  the parties have agreed to it under section 3663(a)(3).

24      While it is clear that the defendant owes far more than $5,000,

25  it is indisputable that he owes at least that much, and in order to

26  avoid the necessity for a full multiple year IRS audit in the

27  context of this proceeding, mandating partial payment of his debt as

28

7

1   restitution is proper.  The defendant clearly has the ability to pay

2   restitution, and payment of some amount now would ameliorate some of

3   the harm caused by the defendant.  Payment of restitution in the

4   amount of $5,000 would also stop the accrual of interest and

5   penalties on that amount of back taxes.

6       While the Government believes that the recommended fine is in

7   accordance with the sentencing guidelines, in the Government's view

8   is more important that the IRS be made whole than the full fine be

9   paid to another agency of the Government.  The Government notes that

10  in determining the amount of the fine, the court must consider any

11  restitution payments that the defendant is obligated to make. USSG

12  §5E1.2(d)(4).  The Government would not object to a $5,000 reduction

13  in the amount of the recommended fine in order to enable the

14  defendant to pay restitution in that amount.

15

16      III.  **Government's Sentencing Recommendation**

17      In accordance with the Plea Agreement, the Government

18  recommends that the defendant be sentenced at the low end of the

19  guideline sentencing range.  If the Government's objection to the

20  base offense level as calculated in the presentence report is

21  sustained, and the final guideline range is determined to be 18-24

22  months in prison, the Government recommends the low end of the

23  guideline range, 18 months in prison.  If the Government's objection

24  is overruled, and the final guideline range is determined to be 21-

25  27 months in prison, the Government joins the Probation Officer in

26  recommending the low end of the guideline range, 21 months in

27  prison.  The prison term should be imposed on each count, to run

28

8

1   concurrently.   A three year term of supervised release is
2   recommended.   The Government does not object to a reasonable self-
3   surrender date.

4       The Government also recommends that the defendant be ordered,
5   pursuant to 18 U.S.C. § 3663(a)(3) and USSG §5E1.1(a)(1), to pay
6   $5,000 restitution to the IRS, and that he be ordered to pay the
7   minimum fine.

8       Finally, the defendant should be ordered to pay a special
9   assessment of $200, and costs of prosecution (which are mandatory
10  under 26 U.S.C. § 7206(2)) of $1,919.75.   A Bill of Costs and
11  supporting documentation for that amount has been filed.

12
13                                  Respectfully submitted,
14
15  DATED: December 31, 2001        JOHN K. VINCENT
                                    United States Attorney
16
17                                  By: [signature]
18                                  BENJAMIN WAGNER
                                    Assistant U.S. Attorney
19
20
21
22
23
24
25
26
27
28

1

## CERTIFICATE OF SERVICE

2          The undersigned hereby certifies that he is an employee in

3   the Office of the United States Attorney for the Eastern District of

4   California and is a person of such age and discretion to be

5   competent to serve papers.

6          That on December 31, 2001, he served a copy of the

7   attached Government's Objection to Presentence Report and Sentencing

8   Memorandum by placing said copy in a postage paid envelope addressed

9   to the person hereinafter listed, and by depositing said envelope in

10  the United States mail at Sacramento, California, and by faxing it

11  to the number below.  In addition, he served a copy on the Probation

12  Officer by Inter-Office delivery.

13

14

15          SERVED BY MAIL                 SERVED BY INTER-OFFICE DELIVERY

16

17  Jennifer Prager Sodaro
    7373 E. Doubletree Ranch Rd.
18  Suite 200
    Scottsdale, AZ 85258
19
    fax (480) 367-9556
20                    5669
                                    Philip R. Hendley, Jr.
21                                  U.S. Probation Office
                                    501 "I" Street, Suite 2500
22                                  Sacramento, CA 95814

23

24

25          BENJAMIN B. WAGNER

26

27

28

10